CLOUSTON, APPELLEE, *v.* REMLINGER OLDSMOBILE CADILLAC, INC., APPELLANT.

[Cite as Clouston v. Remlinger Oldsmobile Cadillac, Inc. (1970), 22 Ohio St. 2d 65.]

(No. 69-95—Decided April 22, 1970.)

*Messrs. George & George* and *Mr. Donald R. Little,* for appellee.

*Messrs. Carson, Vogelgesang, Sheehan & Banas* and *Mr. Gary A. Banas,* for appellant.

O'Neill, C. J. This case presents a simple question which may be stated as follows:

In Ohio, does a wife have a cause of action for damages for the loss of the consortium of her husband against a person who negligently injures her husband, which injuries deprive her of the consortium of her husband?

In this case, the plaintiff alleges in her petition that the defendant-appellant was negligent and that as a result of such negligence her husband was severely and permanently disabled. This action by the plaintiff is not for the pain and suffering and permanent disability of her husband, but is to recover damages for the direct hurt which she has suffered. She alleges that she has lost the consortium of her husband.

"Consortium" consists of society, services, sexual relations and conjugal affection which includes companionship, comfort, love and solace.

It is conceded that, at common law, a wife did not have a cause of action for loss of consortium. At common law, a husband could maintain an action for the loss of the consortium of his wife, which included the loss of services, society and sexual intercourse of the wife.

In Prosser on Torts (3 Ed. 1964), at page 895, it is stated:

"The husband's interest in his relation with his wife first received recognition as a matter of her services to him as a servant. Over a period of some centuries it took form as something considerably broader than this, which was given the name of 'consortium.' Consortium was said to be made up of a bundle of legal rights to the alliterative trio of the services, society and sexual intercourse of the wife. To these elements the modern law has added a

fourth, that of conjugal affection. The rights of the husband extend to all four; and while it is seldom that the defendant's conduct interferes with only one of them, it now seems clear in nearly all jurisdictions that such interference with any one will be sufficient as a foundation for the action. The loss of services, essential at the beginning, no longer is indispensable, and is now only one element upon which the action may be based.''

The reason that, at common law, the husband could pursue such an action but the wife could not is that the common law regarded husband and wife as one person, that person being the husband.

At page 903 of Prosser on Torts, *supra*, it is said:

''The altered position of woman in the modern world has swept all this into history, and in virtually all states the wife is now given the same rights and remedies as the husband, either by specific statutes, or by a more liberal interpretation of the Married Women's Acts in recognition of social changes. The wife may recover for enticement, for criminal conversation, or for mere alienation of affections, even though there is no departure from the home. This is true even though the husband himself was the pursuer or seducer, so long as there was participation or encouragement on the part of the other woman. In other words, so far as intentional interference with the marital relation is concerned the loss of 'services' is not necessary to the action, the right of one spouse to the society, sole intercourse and affection of the other is reciprocal, and the law no longer recognizes any inequality of the sexes. Without repeating what has been said as to the husband's action, it may be stated simply that identical rules govern that of the wife * * *.''

This court recognized that principle in *Flandermeyer* v. *Cooper* (1912), 85 Ohio St. 327. The syllabus in that case reads:

''1. Husband and wife are entitled to the affection, society, cooperation and aid of each other in every conjugal relation, and either may maintain an action for damages against any one who wrongfully and maliciously interferes

with the marital relationship and thereby deprives one of the society, affection and consortium of the other.

"* * *

"3. Hatred, ill will or actual malice towards the injured party is not a necessary ingredient of legal malice as applied to torts, nor is it necessary that the act complained of proceed from a spiteful, malignant or revengeful disposition. If it be wrongful, unlawful and intentional and the natural and probable result of the act is to accomplish the injury complained of, malice is implied."

In *Flandermeyer, supra,* the action was against a defendant who continued to sell morphine to the husband until by the use thereof the husband's mind became impaired and it was necessary to confine him in an asylum. The defendant was held liable to the wife for damages for loss of her husband's consortium.

In discussing the question of whether the wife should have a right to recover for the loss of his consortium, the court, in *Flandermeyer, supra,* said, at page 336:

"It is very clear that originally the common law recognized no such right in the wife. By the primitive law, the only member of the family deemed to be harmed by an unjustifiable disturbance of the family relation was the head of the family. Blackstone in his Commentaries, volume 3, pages 142-143, says that these torts directed against the peace and tranquillity of domestic relations are actionable only when committed against the husband. In the case of *Lynch* v. *Knight,* 9 H. L., 577, Lord Wensleydale held that: 'No recovery could be had without joining the husband in the suit, who himself must receive the money which would not advance the wife's remedy, and to allow her to recover in such an action would involve the absurdity that the husband might also sue for such a cause.'

"It must be remembered, however, that this interpretation of the common law, with reference to the wife's right to maintain an action of this character, obtained upon the theory that the wife's personality merged in that of her husband's, and that she was not then entitled to hold prop-

erty separate and apart from her husband and not authorized to bring suit in her own name. Now the legal status of the wife has been changed by legislation. Her legal personality is no longer merged in that of her husband. By force of the several statutes in this state in reference thereto, a husband has no longer any dominion over the separate property of his wife, and she may maintain an action in her own name, without joining her husband in the suit. The right of action growing out of an injury to her personal rights is her separate property for which she may maintain an action in her own name. The right of the wife to the consortium of the husband is one of her personal rights. It therefore follows that the principle of the common law which allowed a right of action to the husband for the invasion of this right, now, under the changed condition of affairs and in view of the present legal status of the wife, applies to her equally with the husband.''

To summarize, under the common law the husband had an action against the person who *intentionally* interfered with the marital relation for the loss of consortium of his wife. And, likewise, under the common law the husband could bring an action against the person who *negligently* injured his wife for the loss of the consortium of his wife, including loss of services.

Since 1878 the wife has been entitled to maintain a separate action for damages against anyone who *intentionally* injures her husband and thereby deprives the wife of the consortium of her husband. *Westlake* v. *Westlake* (1878), 34 Ohio St. 621, and *Flandermeyer* v. *Cooper,* *supra.*

In 1915, this court decided that a wife has no right of action for the loss of the consortium of her husband against a person who negligently injures her husband. *Smith* v. *Nicholas Building Company,* 93 Ohio St. 101. This has been the law of Ohio since that time. (*Copeland* v. *Smith Dairy Prod. Co.* (1968), 15 Ohio Misc. 43 [*Smith* v. *Nicholas Building Co.,* 93 Ohio St. 101, followed.]), and was the view in almost every jurisdiction of the United States until 1950. It should be noted here that the *Smith*

*case, supra,* was decided five years before the Nineteenth Amendment to the Constitution of the United States was adopted guaranteeing to women the right to vote.

In 1950, in the case of *Hitaffer* v. *Argonne Co.*, 183 F. 2d 811, the United States Court of Appeals, District of Columbia, announced the law in that jurisdiction to be as follows:

"A wife has a cause of action for loss of consortium due to a *negligent* injury of her husband and the 'consortium' consists not only of material services but includes love, affection, companionship, sexual relations, etc." (Emphasis added.)

Since that landmark decision was announced, many jurisdictions in the United States have reconsidered their position and changed their law in accord with that decision.

Arkansas. *Mo. Pac. Trans. Co.* v. *Miller* (1957), 227 Ark. 351, 299 S. W. 2d 41.

California. *Gist* v. *French* (1955), 136 Cal. App. 2d 247, 288 P. 2d 1003.

Delaware. *Stenta* v. *Leblang* (1962), 55 Del. 181, 185 A. 2d 759.

Georgia. *Brown* v. *Georgia Tennessee Coaches, Inc.*,

Indiana. *Karczewski* v. *Baltimore & Ohio Rd. Co.* (1967), 274 F. Supp. 169—Illinois U. S. District Court *Co.* (1967), 274 F. Supp 169—Illinois U. S. District Court interpreted Indiana Rule (which denied wife's recovery) as being unconstitutional.

Illinois. *Dini* v. *Naiditch* (1960), 20 Ill. 2d 406, 170 N. E. 2d 881.

Iowa. *Acuff* v. *Schmit* (1956), 248 Iowa 272, 78 N. W. 2d 480.

Maryland. *Deems* v. *Western Md. Ry. Co.* (1967), 247 Md. 95, 231 A. 2d 514.

Michigan. *Owen* v. *Illinois Baking Corp.* (W. D. Mich. 1966), 260 F. Supp. 820; *Montgomery* v. *Stephan* (1960), 359 Mich. 33, 101 N. W. 2d 227.

Mississippi. *Delta Chevrolet Company* v. *Waid* (1951), 211 Miss. 256, 51 So. 2d 443.

Missouri. *Manley* v. *Horton* (1967), 414 S. W. 2d 254.

Montana. *Duffy* v. *Lipsman-Fulkerson & Co.* (1961), 200 F. Supp. 71.

Nebraska. *Cooney* v. *Moomaw* (1953), 109 F. Supp. 448.

New Jersey. *Ekalo* v. *Constructive Service Corp. of America* (1965), 46 N. J. 82, 215 A. 2d 1.

New York. *Millington* v. *Southeastern Elevator Co.* (1968), 22 N. Y. 2d 498, 239 N. E. 2d 897.

Oregon. *Smith* v. *Smith* (1955), 205 Ore. 286, 287 P. 2d 572.

Rhode Island. *Mariani* v. *Nanni* (1962), 95 R. I. 153, 185 A. 2d 119.

South Dakota. *Hoekstra* v. *Helgeland* (1959), 78 S. D. 82, 98 N. W. 2d 669.

Those cases have had their impact upon Ohio, where some lower courts in recent years have refused to follow *Smith* v. *Nicholas Building Co., supra,* and have given a clear indication that they consider that it is time for that pronouncement to be reconsidered by this court. Those courts in *Clem* v. *Brown* (Paulding County C. P. 1965), 3 Ohio Misc. 167, *Umpleby* v. *Dorsey* (Stark County C. P. 1967), 10 Ohio Misc. 288; *Leffler* v. *Wiley* (Franklin County 1968), 15 Ohio App. 2d 67; *Durham* v. *Gabriel* (Lake County 1968), 16 Ohio App. 2d 51; and the Courts of Appeals in the instant case have all reached the conclusion that ''A wife has a legal right to recover damages for loss of consortium resulting from negligent injury to her husband. The rights of the wife are equal to those of a husband to recover for the loss of consortium resulting from negligent injury to his wife.'' *Leffler* v. *Wiley, supra.*

Since, under the decisions of this court, a wife has a right of action for damages for the loss of the consortium of her husband against a person who *intentionally* injures her husband, logic supports a rule that a wife should have a right of action for damages for loss of the consortium of her husband against the person who *negligently* injures her husband.

*Smith* v. *Nicholas Building Company, supra,* denies the wife a cause of action for the loss of the consortium of her husband caused by the negligence of a person who injured him on the grounds that the "gist" of a husband's action for the loss of the consortium of his wife was the loss of services, and then asserts that since the wife is not entitled to the services of her husband she can not have an action for the loss of the consortium, excluding services, of her husband.

This is an archaic conclusion without reason, based originally upon the ancient concept that a wife was not a person but at most a superior servant to her husband. Therefore, when she was injured intentionally or negligently the husband was entitled to recover for the loss of her services from the person who injured her.

That ancient concept that the wife is only the servant of the husband is no longer valid.

In an action by either the husband or the wife for loss of consortium against an intentional tort-feasor, no allegation or proof of loss of services has been required since 1878. *Westlake* v. *Westlake, supra,* and *Flandermeyer* v. *Cooper, supra.*

The "gist" of the wife's action for loss of the consortium of her husband against a defendant who either intentionally or negligently causes injury to her husband is the direct hurt which she has suffered by reason of the loss of her husband's society, services, sexual relations and conjugal affection which includes companionship, comfort, love and solace.

The argument has been frequently made that to allow such an action to the wife would be to permit a "double recovery." The basis for that argument is that the husband is entitled to full recovery for his injuries, including his loss of earning capacity and that to allow the wife to recover for the loss of the husband's consortium would permit possible double recovery. This is a fictional argument. Its premise is that the jury can not be relied upon to follow the court's proper instructions that the wife is not entitled to recover for any of the items of damage

which could properly be recovered by her spouse, including anything for the loss of his earnings or earning capacity.

No authority has been cited indicating that courts have had difficulty with juries failing to follow instructions in actions by the wife for loss of consortium of the husband due to an intentional injury. There is no difference with regard to this aspect of the cause of action where the loss of consortium results from the negligent act of a defendant.

The argument is likewise made that a loss of consortium, exclusive of loss of services, is not measurable by a jury and, therefore, such an action should not be allowed to a wife. Yet, in the recognized action for loss of consortium based upon an intentional tort, this question must be presented to and decided by the jury, whether a husband or a wife brings the action.

In an action by a husband for loss of the consortium of his wife, where, under *Smith* v. *Nicholas Building Co.*, *supra*, the husband was required to allege loss of services in order to sustain the cause of action for loss of consortium, the jury was required to measure the plaintiff's damages for loss of consortium other than loss of services unless, in fact, *Smith, supra*, held that damages were limited to the loss of services and were not allowable for any other element of consortium.

The common law, as it developed over a period of centuries, came to recognize that consortium of a wife included rights which were broader than "services" and included society and sexual intercourse and conjugal affection.

There certainly is no doubt today that the wife of a husband who has been incapacitated suffers great pain and endures constant anguish, particularly if she is denied the opportunity to have children. The loss to one who has been denied the consortium of his or her spouse is real and constant, whether the denial results from an intentional or a negligent act of a tort-feasor.

Some writers and judges take the position that all actions for "loss of consortium" should be abolished. See

74

dissenting opinion of Shafer, J., in *Dini* v. *Naditch* (1960), 20 Ill. 2d 406, 170 N. E. 2d 881.

The argument has been advanced in some jurisdictions that an action for the loss of consortium should be regarded as a single damage to the marital relationship. *Deems* v. *Western Maryland Ry. Co.* (1967), 247 Md. 95, 231 A. 2d 514. This is another fiction. It is a throw-back to the ancient common law which held to the concept that when two persons married they were merged into one person. Although that concept may still have many symbolic values, it is not a realistic concept today. When a person is injured either intentionally or negligently, to the extent that such person can no longer be a companion and is no longer capable of giving love, affection, society, comfort and sexual relations to his or her spouse, that spouse has suffered a direct and a real personal loss.

The fiction that only a single marital relationship has been damaged is simply a hold-over from the common law which held that when a man and a woman married, the wife's personality merged with the husband's, and that she no longer was a person but only a chattel with no personality, no property and no legally recognized feelings or rights.

A husband has a cause of action for damages for the loss of the consortium of his wife against a person who, either intentionally or negligently, injures his wife, which injuries deprive him of the consortium of his wife.

A wife has a cause of action for damages for the loss of the consortium of her husband against a person who, either intentionally or negligently, injures her husband, which injuries deprive her of the consortium of her husband.[1] *Smith* v. *Nicholas Building Company*, 93 Ohio St. 101, is overruled.

---

[1]See Ohio Rules of Civil Procedure, as submitted to the 108th General Assembly on January 13, 1970, by the Supreme Court of Ohio, which, unless amended or made ineffective by action of the General Assembly prior to July 1, 1970, shall become effective on that date; Rule 19.1, Compulsory Joinder, paragraphs (A)(2), (B) and (C). O'Neill, J., and Herbert, J., dissented from the decision of the majority of the court to include Rule 19.1 in the Rules of Civil Procedure.

The judgment of the Court of Appeals is, therefore, affirmed.

*Judgment affirmed.*

SCHNEIDER, HERBERT, DUNCAN and CORRIGAN, JJ., concur.[2]

MATTHIAS, J., not participating.