MUSICK, Appellant, et al.

v.

DUTTA et al., Appellees.

[Cite as *Musick v. Dutta,* 167 Ohio App.3d 269, 2006-Ohio-2864.]

Court of Appeals of Ohio,
Fourth District, Jackson County.

No. 05CA15.

Decided May 31, 2006.

Craig D. Barclay, for appellant.

Bobbie S. Sprader, for appellees.

ABELE, Judge.

{¶ 1} This is an appeal from a Jackson County Common Pleas Court summary judgment in favor of Nirmil K. Dutta, M.D., and Oak Hill Surgical Practice, defendants below and appellees herein.[1]

{¶ 2} Betty Musick, plaintiff below and appellant herein, raises the following assignment of error for review and determination:

The Common Pleas Court of Jackson County, Ohio erred to the substantial prejudice of plaintiff-appellant by improperly ruling upon a motion for summary judgment that plaintiff Betty Musick's loss of consortium claims were time barred and that her claim accrued before the underlying claim of her husband, James Musick. Ohio Law clearly states that a loss of consortium claim accrues at the same time as the underlying medical malpractice claim.

{¶ 3} On June 17, 2002, appellant's spouse, James F. Musick, arrived at the Holzer Medical Center–Jackson emergency room in a weakened condition following a surgery performed the previous month at the Ohio State University Medical Center ("OSU"). After an initial assessment, the emergency room physician called Dr. Nirmil Dutta, who was on call, to discuss James's condition. Dr. Dutta advised the physician to admit James, and on June 23, 2002, he was transferred to OSU.

{¶ 4} On June 24, 2002, James had surgery at OSU to drain a lumbar abscess. After the surgery, a physician informed appellant that James had a staph infection that had developed into an abscess and might render him unable to

---

1. Appellees filed a cross-appeal. On September 6, 2005, we dismissed it.

walk. The physician stated that Dr. Dutta had not properly treated the infection and that if he had done so, the problem could have been avoided.

{¶ 5} On November 3, 2003, appellant and James filed a medical-malpractice and loss-of-consortium complaint against Dr. Dutta, Oak Hill Surgical Practice, and Holzer Medical Center in Jackson. Subsequently, Dr. Dutta and Oak Hill Surgical Practice requested summary judgment and argued that R.C. 2305.11 bars the claims because the cause of action accrued June 24, 2002, and appellants failed either to file a complaint or serve a claim letter until July 3, 2003. Appellees contended that appellant and James knew of the alleged malpractice on June 24, 2002, following James's surgery, when a physician informed appellant of James's condition and his belief that Dr. Dutta had failed to properly treat him.

{¶ 6} In response, appellant asserted that James did not become aware of the claim until July 3, 2002, and although appellant may have learned of the malpractice on June 24, 2003, her knowledge is not imputed to her spouse, James, for purpose of the discovery rule. Appellant and James thus contended that because appellant's consortium claim is derivative, it accrues on the same date as the malpractice claim.

{¶ 7} On June 8, 2005, the trial court denied appellees' summary judgment request as to James. The court ruled that appellant's knowledge could not be imputed to James and found that genuine issues of material fact existed as to when James discovered the malpractice. With respect to appellant's consortium claim, however, the court awarded appellees' summary judgment. This appeal followed.

{¶ 8} In her sole assignment of error, appellant asserts that the trial court improperly concluded that her loss-of-consortium claim is time-barred and, consequently, improperly granted appellees summary judgment. Appellant claims that the court wrongly determined that her claim accrued before her spouse's underlying medical malpractice claim and that pursuant to *Hershberger v. Akron City Hosp.* (1987), 34 Ohio St.3d 1, 516 N.E.2d 204, both claims must accrue on the same date. In particular, she argues that the injured spouse's knowledge of the medical-malpractice claim, not her knowledge, triggers her loss-of-consortium claim. Thus, she disputes the view that because she became aware of the malpractice claim before her husband became aware of his claim, her consortium claim accrued on the date she learned of the malpractice.

{¶ 9} Appellees assert that appellant's loss-of-consortium claim accrued on June 24, 2002, the date she learned of Dr. Dutta's alleged malpractice. They dispute appellant's argument that her claim must accrue on the same date as James's malpractice action.

{¶ 10} When an appellate court reviews a trial court's summary judgment decision, the appellate court must conduct a de novo review. See, e.g., *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Accordingly, appellate courts must independently review the record to determine whether summary judgment is appropriate. Appellate courts need not defer to the trial court's decision. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153; *Morehead v. Conley* (1991), 75 Ohio App.3d 409, 411–412, 599 N.E.2d 786. Thus, in determining whether a trial court properly granted summary judgment, an appellate court must review the Civ.R. 56 standard for granting a motion for summary judgment, as well as the applicable law.

{¶ 11} Civ.R. 56(C) provides:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

Thus, a trial court may not grant summary judgment unless the evidentiary materials demonstrate that (1) no genuine issue as to any material fact remains to be litigated; (2) after the evidence is construed most strongly in the nonmoving party's favor, reasonable minds can come to but one conclusion, which is adverse to the nonmoving party; and (3) the moving party is entitled to judgment as a matter of law. E.g., *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429–430, 674 N.E.2d 1164.

{¶ 12} In *Flowers v. Walker* (1992), 63 Ohio St.3d 546, 548, 589 N.E.2d 1284, the court discussed when a medical-malpractice claim accrues:

In Ohio, a cause of action for medical malpractice does not accrue until the patient discovers, or should have discovered in the exercise of reasonable care and diligence, the resulting injury. *Oliver v. Kaiser Community Health Found.* (1983), 5 Ohio St.3d 111, 5 OBR 247, 449 N.E.2d 438, at syllabus. In *Hershberger v. Akron City Hosp.* (1987), 34 Ohio St.3d 1, 516 N.E.2d 204, this court stated a three-prong test to determine the date that a medical malpractice cause of action accrues under the discovery rule. The three factors to be

considered by the trial court are (1) when the injured party became aware, or should have become aware, of the extent and seriousness of his condition; (2) whether the injured party was aware, or should have been aware, that the condition was related to a specific professional service that he previously received; and (3) whether such condition would put a reasonable person on notice of the need to inquire into the cause of his condition.

Id. at paragraph one of the syllabus. In *Hershberger v. Akron City Hosp.* (1987), 34 Ohio St.3d 1, 516 N.E.2d 204, paragraph two of the syllabus, the Ohio Supreme Court held: "The statute of limitations for a loss of consortium claim is initiated on the same date that the statute of limitations for the spouse's medical malpractice claim begins to run." The court disagreed with the lower court's holding that a spouse's consortium claim accrues when the alleged malpractice occurred. In the case sub judice, appellant does not dispute that she learned of Dr. Dutta's alleged malpractice on June 24, 2002. She asserts, however, that because her husband allegedly did not discover the claimed malpractice until July 3, 2002, her consortium claim did not accrue until her husband became aware of his malpractice claim.

■ {¶ 13} At first glance, we acknowledge that a straight reading of the *Hershberger* syllabus appears to support appellant's argument. We believe, however, that the broad syllabus language must be examined in light of the facts of each particular case.

{¶ 14} In *Hershberger,* the spouse was unaware of the malpractice until her injured spouse learned of it. The court, in essence, determined that the consortium claim should not begin to run on the date of the spouse's injury that resulted from what they both later discovered to be malpractice, but rather should begin to run on the date the injured spouse discovers the malpractice. In *Viock v. Stowe–Woodward Co.* (1983), 13 Ohio App.3d 7, 16, 13 OBR 8, 467 N.E.2d 1378,[2] the court observed that a consortium claim may accrue at a different time from the injured spouse's cause of action:

> We recognize that in many instances, * * * the accrual of the loss of consortium of one's spouse will, necessarily, coincide with the accrual of that spouse's cause of action. We do, however, also recognize that in a case such as the one we must now decide, the injured spouse's cause of action and his/her spouse's cause of action for loss of consortium may not have accrued at the same time. Restated, consortium may not always be lost when an injured plaintiff knew or reasonably should have known that he/she was injured by the conduct of the defendant. In such cases, it is difficult to imagine how the claim for loss of consortium can accrue, even though the injured spouse's cause of action accrued, if consortium has not been lost.

---

**2.** Although *Viock* preceded *Hershberger,* we nonetheless find its discussion relevant.

When a person is injured to the extent that such person is no longer capable of giving love, affection, society and comfort to his or her spouse, that spouse has suffered a direct and real personal loss. *Clouston*, supra, 22 Ohio St.2d at 74, 51 O.O.2d 96, 258 N.E.2d 230. This loss results in a distinct cause of action for loss of consortium, separate from that of his or her spouse for injuries against the tortfeasor. *Clouston*, supra, at 69, 51 O.O.2d 96, 258 N.E.2d 230. Thus, unless and until consortium has been lost, an action for its loss has not accrued within the meaning of R.C. 2305.09(D).

The *Viock* court reversed the trial court's summary judgment on the wife's consortium claim because the record contained no evidence regarding when the wife lost her husband's consortium.

{¶ 15} In the case sub judice, appellant learned of Dr. Dutta's possible malpractice and the loss of her spouse's consortium on June 24, 2003. Appellant's loss-of-consortium claim is separate, distinct, independent, and severable from the underlying malpractice claim. Of course, to establish a loss-of-consortium claim, an underlying malpractice must be affirmatively established. However, in the instant case, simply because appellant's spouse did not become aware of his malpractice claim until a later date does not require the conclusion that appellant's loss-of-consortium claim must necessarily accrue at that later date. Although appellant, in order to establish her loss-of-consortium claim, must prove that her husband suffered injury that resulted from medical negligence, appellant's claim is not completely dependent upon her spouse bringing a negligence action. For example, appellant's spouse could conceivably, for whatever reason, opt against bringing an action against his physician. Appellant's spouse's decision should not bar appellant from bringing her separate, distinct, independent and severable claim against the physician. Thus, we believe that appellant's cause of action should accrue according to traditional standards (i.e., when a claimant discovers the malpractice).

{¶ 16} We find that the cases appellant cites to support her argument that her consortium claim must necessarily accrue on the same date that her husband discovered the malpractice are unpersuasive. None involve facts similar to the facts in the instant case, i.e., when the consortium claimant discovers the malpractice before the injured party. We also agree that the R.C. 2305.16 tolling provisions do not apply to the case at bar. The statute states that "if a person entitled to bring any action * * * is, at the time the cause of action accrues, within the age of minority or of unsound mind, the person may bring it within the respective times * * * after the disability is removed. When the interests of two or more parties are joint and inseparable, the disability of one shall inure to the benefit of all." No one has argued that James was within the age of minority or of unsound mind, or that his and appellant's claims are joint and inseparable. Thus, the tolling statute does not apply.

{¶ 17} Accordingly, based upon the foregoing reasons, we overrule appellant's sole assignment of error and affirm the trial court's judgment.

Judgment affirmed.

HARSHA, J., concurs.

MCFARLAND, J., dissents.

HARSHA, Judge, concurring.

{¶ 18} I agree with the principal opinion that *Hershberger* does not require us to reverse the trial court's judgment. The complaint in *Hershberger* did not indicate when the underlying malpractice "began to deprive her of her husband's 'society, comfort and companionship.'" 34 Ohio St.3d at 6, 516 N.E.2d 204. (It doesn't appear that the court looked to other parts of the record to learn when her loss occurred.) Rather than presuming that her loss of consortium immediately arose on the date of malpractice, the court fashioned a rule based upon the logical approach that the clock must begin to run on the same date that her spouse's medical-malpractice claim accrued.

{¶ 19} Here, the record clearly indicates that Mrs. Musick both suffered her own loss and knew the cause of that injury prior to the accrual date of her husband's medical-malpractice claim. Thus, *Hershberger* is distinguishable, notwithstanding the broad language of paragraph two of its syllabus. As the principal opinion indicates, the syllabus of a Supreme Court case should not be construed as being broader than the facts of that specific case demand. *State v. McDermott* (1995), 72 Ohio St.3d 570, 574, 651 N.E.2d 985. See, also, former S.Ct.R.Rep.Op. 1(B) (effective until May 1, 2002), which provided that the syllabus "states the controlling point * * * of law decided in and *necessarily arising from the facts of the specific case* before the Court for adjudication." (Emphasis added.)

{¶ 20} In a set of events that is the reciprocal of ours, the appellate court in *Viock,* supra, 13 Ohio App.3d 7, 13 OBR 8, 467 N.E.2d 1378, recognized that it would be unfair to start the statute of limitations running on a spouse's loss-of-consortium claim *before* the spouse had suffered his or her own injury. Thus, in the situation where the malpractice plaintiff's action had already accrued before the loss of consortium occurred, the *Hershberger* court's concern for a "more consistent and logical approach," 34 Ohio St.3d at 6, 516 N.E.2d 204 would require delaying the consortium plaintiff's statute of limitations until he or she had actually suffered his or her own injury. This is true regardless of whether the consortium plaintiff knew of the accrual of the malpractice plaintiff's claim. For until consortium has been lost, how can an action for that injury accrue within the meaning of the statute of limitations? *Viock,* 13 Ohio App.3d at 16, 13 OBR 8, 467 N.E.2d 1378.

{¶ 21} Likewise, in our situation there is no consistency or logic in a rule that would allow Mrs. Musick to have both an injury in fact (loss of consortium) and knowledge of its proximate cause (medical malpractice) and yet delay the running of the statute of limitations until a separate and distinct cause of action in another plaintiff has accrued. Consistency can be promoted by adopting the simple rule that a plaintiff's cause of action for loss of consortium accrues when the plaintiff has both suffered a loss of consortium and knows or objectively should know that the malpractice is the proximate cause of that injury. This is the same rule that applies to the malpractice plaintiff's claim. And it is consistent with the rationales underlying statutes of limitation: to ensure fairness to the defendant, to encourage prompt prosecution of causes of action, to suppress stale and fraudulent claims, and to avoid the difficulties of proof and inconvenience engendered by delay. See *O'Stricker v. Jim Walter Corp.* (1983), 4 Ohio St.3d 84, 88, 4 OBR 335, 447 N.E.2d 727. The fact that the two clocks may start ticking at different times is not an impediment to fairness. Consider the situation where the potential malpractice plaintiff has learned of both his injury and the doctor's culpability yet decides against informing his spouse in an effort to spare or delay his wife's mental anguish. The wife loses her husband's consortium but does not know the underlying cause. Would a logical rule start the running of the statute before she knows or should know of the proximate cause of her loss? Tying her claim to her husband's would cause that result. The better rule is that accrual of the action and the accompanying running of the statute begin when the plaintiff both suffered a loss and knows or reasonably should know its proximate cause.

{¶ 22} Applying that rule here requires us to affirm the trial court's judgment.