OPINION
{¶ 1} This is an appeal and a cross-appeal from an entry of judgment against defendants-appellees in the amount of $275,000.00, dated April 25, 2005, following a trial by jury.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On January 8, 1999, Appellants/Cross-Appellees John and Nancy Hutchings were injured in a motor vehicle collision. Appellee/Cross-Appellant David Childress, an employee of Appellee/Cross-Appellant, Central Ohio Paintball, Inc., was driving a company truck and failed to stop at a stop sign at the intersection of Glick Road and Memorial Drive. Nancy Hutchings was in the front passenger seat. Childress crashed into the passenger side of the Hutchings' van causing Nancy Hutchings to strike her head and suffer a closed head injury later diagnosed as a traumatic brain injury (TBI).
 {¶ 3} Appellants filed a Complaint in the Delaware County Court of Common Pleas alleging personal injuries, loss of services and consortium and naming David R. Childress and Central Ohio Paintball, Inc. as defendants.
 {¶ 4} This matter was tried before a jury on April 5, 6 and 7, 2005.
 {¶ 5} The following facts were presented at trial:
 {¶ 6} In 1991, John Hutchings began working for Advest as an investment broker. Nancy, who also had a securities license, joined him full-time in this business. She handled the paperwork and administered duties for the business for eight years before her injury. According to John Hutchings, before Nancy was injured she "ran the household the same way she ran the office . . . she just took care of it . . . I took care of the clients and Nancy took care of just about everything else."
 {¶ 7} Appellants' tax returns who that both John and Nancy Hutchings received compensation from Advest.
 {¶ 8} According to Appellants, after the accident, Nancy Hutchings' ability to perform her previous duties at home and work was severely compromised. As a result, John Hutchings performed many of the tasks Nancy previously managed. John spent most of the first six weeks after the crash at home taking care of Nancy and working out of the house. He took time away from work to care for Nancy. He has attended more than one hundred doctors' appointments with Nancy since her injury. He has taken over her household duties and comes home for lunch regularly to check on her. As a result, John testified he "suffered an income loss because of the accident."
 {¶ 9} Nancy returned to work and earned income for the years 1999, 2000, 2001, 2002, 2003 and 2004.
 {¶ 10} Appellants' expert economist, John F. Burke, Ph.D., testified a trial in support of Appellants' claim for lost income based on the time John Hutchings spent taking care for his wife.
 {¶ 11} Dr. Burke opined that John Hutchings would earn a good income in the future, but that he would have been able to earn significantly more income but for the changes in his work time caused by his wife's injuries. According to Dr. Burke, if John Hutchings works until his Social Security retirement age of 66 and 8 months, he will have lost $2,296.000.00 that he otherwise would have earned but for Nancy Hutchings' injuries. If Mr. Hutchings works until his work-life expectancy, approximately age 62, the income lost will be $1,775,000.00. Dr. Burke also calculated John's past lost income component as $288,659.00 and advised the jury that this figure is included in each of his total lost income calculations.
 {¶ 12} Joint tax returns were also admitted in support of such claim.
 {¶ 13} The jury returned a verdict and signed an interrogatory awarding damages to Nancy Hutchings in the total amount of $255,000. The jury also returned a general verdict awarding damages of $20,000 to John Hutchings for loss of consortium. The trial court entered judgment on April 25, 2005 for a total verdict against the defendants in the amount of $275,000.
 {¶ 14} The trial court's Judgment Entry included the following language:
 {¶ 15} "The Court further granted defendants' request not to instruct the jury on plaintiffs' claim for John Hutchings' lost income resulting from the injuries suffered by Nancy Hutchings."
 {¶ 16} Appellants filed their notice of appeal on May 25, 2005, limiting their appeal "to the Trial Court's decision not to instruct the jury that it could award plaintiffs the income relating to John Hutchings that was lost as a result of his wife's injuries."
 {¶ 17} Appellees filed a Notice of Cross-Appeal on June 6, 2005
 {¶ 18} The following errors are assigned for review:
 ASSIGNMENTS OF ERROR APPELLANTS {¶ 19} "I. THE TRIAL COURT ERRED BY (A) GRANTING DEFENDANTS' REQUEST NOT TO INSTRUCT THE JURY ON THE LOST INCOME OF JOHN HUTCHINGS AS A COMPONENT OF PLAINTIFFS' DAMAGES RESULTING FROM
THE INJURIES SUFFERED BY NANCY HUTCHINGS, AND (B) REFUSING TO SUBMIT PLAINTIFFS' REQUESTED INTERROGATORY TO ESTABLISH THE JURY'S AWARD OF COMPENSATORY DAMAGES ATTRIBUTABLE TO NANCY HUTCHINGS' INJURIES FOR PAST AND FUTURE LOST INCOME OF JOHN HUTCHINGS."
 CROSS-APPELLANTS {¶ 20} "I. THE TRIAL COURT ERRED BY FAILING TO ISSUE AN INSTRUCTION TO THE JURY IN REGARD TO MITIGATION OF DAMAGES.
 {¶ 21} "II. THE TRIAL COURT ERRED BY DIRECTING A VERDICT FOR PLAINTIFFS INSTRUCTING THE JURY THAT CENTRAL OHIO PAINTBALL WAS RESPONSIBLE FOR DAVID CHILDRESS' ACTIONS.
 {¶ 22} "III. IT WAS ERROR FOR THE COURT TO DENY EVIDENCE THAT THE PLAINTIFFS BRAIN TUMOR TO BE SUBMITTED TO THE JURY WHERE PLAINTIFF ALLEGED A TRAUMATIC BRAIN INJURY AS A RESULT OF THE ACCIDENT AND SHE SUSTAINED SYMPTOMS CONSISTENT WITH BOTH DIAGNOSIS AND RECEIVED SOCIAL SECURITY DISABILITY BENEFITS FOR THE VERY SYMPTOMS PLAINTIFFS ALLEGED WERE CAUSED BY DEFENDANTS.
 I. {¶ 23} In their sole assignment of error, Appellants argue that the trial court erred in failing to give an instruction to the jury informing them that they could make an award for lost income for John Hutchings. We disagree.
 {¶ 24} Appellant argues that the jury should have been allowed to consider the issue of the wages John Hutchings lost as a result of staying home and providing care to his wife.
 {¶ 25} Upon review of the record, we find that John Hutchings' only claim was one for loss of consortium based on his wife's personal injuries. He did not make a claim for any personal injuries of his own.
 {¶ 26} Spousal consortium has been defined as "society, services, sexual relations and conjugal affection which includes companionship, comfort, love and solace." Clouston v. RemlingerOldsmobile Cadillac, Inc. (1970), 22 Ohio St.2d 65,258 N.E.2d 230,
 {¶ 27} Evidence was presented to the jury with regard to the lost wages of Nancy Hutchings, the loss services of Nancy Hutchings and the cost of home health care for Nancy Hutchings.
 {¶ 28} To allow the jury to consider and award damages for both the cost of home health care for Mrs. Hutchings and Mr. Hutchings' lost wages resulting from the care he provided would be to allow recovery twice for the same damages.
 {¶ 29} We find Appellant's reliance on Henson v. Andre,
(1982) Tenth Dist. App. No. 82AP-84, to be misplaced. InHenson, both the husband and wife operated a family business. When the husband was unable to work at such family business because of his injuries, the wife was required to hire someone to help. In Henson, unlike the case sub judice, the injured party (the husband) did not seek recovery of lost wages or damages for impairment of his earning capacity. The trial court, based on these specific set of facts, allowed the cost of the extra help needed to replace the husband as part of the wife's claim for loss of consortium.
 {¶ 30} We find said case to not be applicable to the present case in that Appellants did not operate a "family business" within the meaning of the type of business considered by the Henson court. Furthermore, in the instant case, Appellant Nancy Hutchings did make her own claim fro lost wages.
 {¶ 31} Based on the foregoing, we do not find that the trial court erred in not allowing the jury to consider John Hutchings' lost wages.
 {¶ 32} Appellant's sole assignment of error is overruled.
 CROSS-APPEAL I. {¶ 33} In their first assignment of error, Cross-Appellants maintain that the trial court erred in failing to instruct the jury with regard to mitigation of damages. We disagree.
 {¶ 34} Upon review of the transcript, it appears that the request for an instruction on mitigation related to John Hutchings' claim for lost wages:
 {¶ 35} Mr. Norman: "Your Honor, I know that O.J.I. has an instruction for mitigation of damages. Could we ask that that be included?
 {¶ 36} The Court: "I haven't heard anything as to what they could have done differently to mitigate damages.
 {¶ 37} Mr. Norman: "Well, in this particular case, he's alleging that he lost a significant amount of income because he was going home to be with his wife, spending time to go home and watch her as opposed to having somebody else pop in and make sure she had lunch. I think that's certainly something the jury could think about and consider, or travel. So he could still continue to conduct his business. You're talking about a man who is alleging to this jury that he went from $380,000 or $350,000 worth of income to $75,000 because he had to go home and be with his wife." (T. at 312).
 {¶ 38} As the trial court did not allow the jury to consider Mr. Hutchings' lost wages, the issue of mitigation of same is moot.
 {¶ 39} Furthermore, Appellees/Cross-Appellants never raised mitigation as an affirmative defense prior to the close of trial.
 {¶ 40} Mitigation is an affirmative defense to a claim.Young v. Frank's Nursery Crafts, Inc. (1991),58 Ohio St.3d 242, 569 N.E.2d 1034. "Affirmative defenses, other than those specified in Civ.R. 12(B), are waived if not raised in a pleading, pursuant to Civ.R. 8(C), or an amended pleading, pursuant to Civ.R. 15." Schumar v. Kopinsky (August 30, 2001), Cuyahoga App. No. 78875.
 {¶ 41} Cross-Appellants' first assignment of error is overruled.
 II. {¶ 42} In its second assignment of error, Cross-Appellants argue that the trial court erred in by directing a verdict as to the liability of Central Ohio Paintball for David Childress' actions. We disagree.
 {¶ 43} A review of the record supports the trial court's finding that:
 {¶ 44} "The whole time this case has been pending the first time and the period of time this case has been pending this time and all the multiple pre-trial hearings we've had, never was that issue ever addressed. In fact, it always has been consistent, the only issues for consideration are probable cause — proximate case for the injuries and the extent of damages." (T. at 13).
 {¶ 45} Even Appellees/Cross-Appellants' own pre-trial statement, docketed on January 14, 2002, states as follows:
 {¶ 46} "I. Statement of Facts
 {¶ 47} "This case arises from a vehicle collision which occurred on January 8, 1999 at the intersection of Glick Road and Muirfield Drive in Dublin, Delaware County, Ohio. Liability is not an issue.
 {¶ 48} "II. Issues of Fact
 {¶ 49} "Nature, extent and proximate cause of Plaintiff's damages.
 {¶ 50} "III. Issues of Law
 {¶ 51} "None anticipated."
 {¶ 52} Based on the foregoing, Appellees/Cross-Appellants cannot now be heard to argue that liability was an issue.
 {¶ 53} Appellees/Cross-Appellants' second assignment of error is overruled.
 III. {¶ 54} In their third assignment of error, Appellees/Cross-Appellants argue that the trial court erred by denying Cross-Appellants the right to present evidence on the issue of Appellant's brain tumor. We disagree.
 {¶ 55} At the pre-trial hearing in this matter, counsel for Appellees/Cross-Appellants and counsel for Appellant/Cross-Appellee both advised the trial court that there were no doctors, on either side that could attribute the cause of any of Nancy Hutchings' problems to her brain tumor. (Pre-trial T. at 8, 10).
 {¶ 56} In fact, in support of the motion in limine, Appellant/Cross-Appellee had the opinion of neurosurgeon stating that none of her symptoms were caused by the brain tumor. (Pre-trial T. at 10).
 {¶ 57} We therefore find that the trial court did not err in precluding evidence concerning the existence of Nancy Hutchings' brain tumor.
 {¶ 58} Cross-Appellants' third assignment of error is overruled
 {¶ 59} Accordingly, the judgment of the Delaware County Court of Common Pleas is affirmed.
By: Boggins, J. Wise, P.J. and Gwin, J. concurs.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Delaware County Court of Common Pleas, Ohio, is affirmed. Costs assessed to Appellants/Cross-Appellees and Appellees/Cross-Appellants equally.